UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.

VLADISLAV KOTLYAR,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CR-75 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 16, 2023, Vladislav Kotlyar ("Defendant") waived indictment and pled guilty to the sole count of an Information, charging him with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. Plea Agreement ¶ 1, ECF No. 12; Information, ECF No. 7. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 33 months of custody, to be followed by two years of supervised release with standard and special conditions, forfeiture in the amount of $932,789.00 as set forth in the Order of Forfeiture, ECF No. 14, restitution in the amount of $738,724.30 as set forth in the Order of Restitution, ECF No. 32, and payment of the mandatory special assessment of $100.00.

## I. BACKGROUND

On March 16, 2023, the United States filed an Information alleging Defendant, together with others, submitted and caused to be submitted forged prescriptions and medical records for specialty baby formula to a pharmacy and national distributor of medical supplies between March 2019 and October 2022. Information ¶ 10; Presentence Investigation Report ("PSR") ¶ 4, ECF No. 15. To effectuate the scheme, Defendant obtained the medical records and prescriptions of infants requiring specialty formula due to allergies and food sensitives, and used that information to forge signatures and other prescription information. PSR ¶ 5. Once Defendant submitted these forged prescriptions and medical records, pharmacies and distributors then shipped specialty baby formula to Defendant and others involved in the offense via private and commercial interstate carriers. *Id.* ¶¶ 4-6. After the baby formula was delivered, Defendant

1

contacted the distributors to report various fabricated issues with the shipments. *Id.* ¶ 8. Defendant represented himself as the father of the infants and used their names. *Id.* The distributors would then ship replacement formula at no cost, after which Defendant sold the fraudulently obtained formula for personal profit. *Id.*

As the Government notes, Defendant undertook this scheme at time when the "United States experienced a national shortage on baby formula, leading to the President invoking the Defense Production Act to increase national supply." Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF Nos. 30, 31. Using this scheme, Defendant caused a private health insurance provider to be billed $1,500,000.00 in fraudulently obtained claims for specialty baby formula between March 2019 and April 2022. PSR ¶ 9. As part of the plea agreement, Defendant stipulated to an intended loss amount of more than $1,500,00.00. *Id.*; Plea Agreement ¶ 2. Between December 2019 and October 2022, Defendant caused one medical supply distributor to bill insurers approximately $434,000.00, and another to ship $175,000.00 worth of formula at no cost. PSR ¶ 10. Defendant also stipulated in the plea agreement to an actual loss of more than $550,000.00, although the actual loss is unknown. *Id.*; Plea Agreement ¶ 2.

On March 16, 2023, Defendant self-surrendered to plead guilty to the Information. PSR ¶ 11. As part of his plea agreement, Defendant agreed not to appeal or otherwise challenge his sentence or conviction if the Court imposes a sentence at or below 46 months of imprisonment. Plea Agreement ¶ 4.

## II. LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court

2

chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. ANALYSIS

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1.  Family and Personal Background

Defendant was born on February 14, 1979 in Kyiv, Ukraine to Arkaidy and Alla Kotlyar. PSR ¶ 34. Defendant's parents divorced when he was three years old and Defendant has had no contact with his father since childhood. *Id.* ¶¶ 34, 35. Defendant was primarily raised by his mother in Ukraine in an average-income household free from abuse. *Id.* ¶ 35. Defendant immigrated to the United States and settled in Brooklyn, New York in 1990 with his mother, who financially supported him while she worked full-time and attended college. *Id.* Defendant's

3

mother, who remains in Brooklyn, is aware of Defendant's conviction for the instant offense and remains supportive. *Id.* ¶ 34.

Since 2008, Defendant has been married to Yana Postel-Kotlyar, who is employed as a social worker. *Id.* ¶ 36. Mrs. Postel-Kotlyar is aware of Defendant's conviction for the instant offense and remains supportive. *Id.* Since Defendant's arrest, Mrs. Postel-Kotlyar has taken on additional employment to supplement Defendant's lost income. *Id.* ¶ 37. Together they have two children, ages 14 and 11 years old. *Id.* ¶ 36.

2.   Educational and Employment History

In 1998, Defendant graduated from Edward R. Murrow High School in Brooklyn, New York. *Id.* ¶ 43. Defendant graduated from Brooklyn College in 2002 with a Bachelor of Science in Finance. *Id.* ¶ 44. Defendant graduated from Long Island University Brooklyn in 2007 with a Master of Business Administration. *Id.* ¶ 45.

Defendant began working as an adolescent and has held numerous jobs over the past three decades. *Id.* ¶¶ 47-52. Between the ages of 12 and 19, Defendant worked in Brooklyn at a supermarket, pharmacy, and bagel store, and volunteered at local nursing homes. *Id.* ¶ 52. During college, Defendant worked as a junior accountant at Brookdale Hospital in Brooklyn. *Id.* ¶ 51. After earning his graduate degree, Defendant worked as a grant manager and junior accountant at that hospital from 2007 to 2014. *Id.* ¶ 50. Defendant worked as a senior budget director at New York City Health and Hospitals from 2014 until March 2023, at which point he was fired from the position because of his arrest for the instant offense. *Id.* ¶ 49. Since that time, Defendant has teleworked as a part-time consultant for After-School All Stars, a non-profit supporting low-income youth, where he manages and seeks grants and vouchers for funders. *Id.* ¶ 47. In addition, since September 2023, Defendant has worked at the Joan & Alan Bernikow

Jewish Community Center of Staten Island, New York as the Director of Accounting. Addendum to the PSR at 1, ECF No. 18; Defense Sentencing Memorandum ("Def. Mem.") at 15, ECF No. 28. Defendant is also currently involved with the Aleph Institute's alternative sentencing division, where he helps organize synagogue events, volunteers at local food banks, and attends religious services. PSR ¶ 55; Def. Mem. at 18.

      3.     Prior Convictions

Defendant has no prior criminal convictions or arrests. *See id.* ¶¶ 27-32.

      4.     Physical and Mental Health

Defendant reported no serious problems with his physical or mental health, except for high blood triglycerides, which does not require medication. *Id.* ¶¶ 40-41.

      5.     Substance Abuse

Defendant consumes alcohol socially and tried marijuana once in 1998. *Id.* ¶ 42.

      6.     Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

      **B.**     **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved a systematic mail fraud scheme in which Defendant obtained and forged prescriptions and medical records for specialty baby formula to receive no-cost replacements of formula, which he could then re-sell at a profit for himself. Defendant's intended loss was greater than $1,500,000.00 and he stipulated to an actual loss of more than $550,000.00. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to sole count of the Information, charging him with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. Plea Agreement ¶ 1.

For the sole count, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment. 18 U.S.C. § 1341. Defendant faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e). Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years. If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). However, the PSR states there is no evidence Defendant has the ability to pay a fine given the priority of restitution. Probation Recommendation at 2,

ECF No. 15-1. The Court is required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A). Defendant is also subject to forfeiture in the amount of $932,789.00 as detailed in the Order of Forfeiture, which, by its terms, becomes final at this sentencing. Order of Forfeiture, ECF No. 14; *see also* Plea Agreement ¶ 6. Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution. Defendant is responsible for restitution in the total amount of $738,724.30, which will be apportioned among the five victim health insurance providers. PSR ¶¶ 12, 69; *see also* Victim Impact Statement, ECF No. 29; Second Addendum to the PSR, ECF No. 25.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The U.S. Probation Department ("Probation") asserts the applicable Guideline for mail fraud under 18 U.S.C. § 1341 is U.S.S.G. §2B1.1(a), which provides a base offense level of 7 because the offense is referenced in this Guideline and has a statutory maximum term of imprisonment of 20 years. PSR ¶ 17. As stipulated in the plea agreement, Defendant is responsible for an intended loss amount of more than $1,500,000.00, resulting in a 16-level increase pursuant to U.S.S.G. §2B1.1(b)(1)(I). *Id.* ¶ 17; Plea Agreement ¶ 2. Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. *Id.* ¶¶ 24-25. Altogether, Probation calculates Defendant's total adjusted offense level is 20. *Id.* ¶ 26.

The Government agrees with most of Probation's calculations. Gov't Mem. at 2. However, the Government notes Defendant is eligible for a further two-level reduction because

he qualifies as a Zero-Point Offender under U.S.S.G. §4C1.1(a). *Id.* Altogether, the Government calculates Defendant's total adjusted offense level is 18. *Id.*

Defense counsel disagrees with both Probation's and the Government's Guidelines calculations. While defense counsel agrees with Probation and the Government with respect to the applicable Guideline section and base offense level, defense counsel argues for a 14 rather than 16-level enhancement for the loss caused by Defendant, predicated on an actual loss of more than $550,000.00 rather than the intended loss of more than $1,500,000.00. Def. Mem. at 4-7 (citing *Kisor v. Wilkie*, 588 U.S. 558 (2019); *United States v. Riccardi*, 989 F.3d 476, 476-80 (6th Cir. 2021); *United States v. Beebe*, 21-CR-197 (E.D.N.Y. Dec. 20, 2021) (Amon, J.); *United States v. Gary*, 20-CR-440 (E.D.N.Y. Aug. 24, 2023) (Donnelly, J.)). The Government disagrees, noting the Second Circuit has not narrowed the application of loss under the Guidelines to only actual loss. Gov't Mem. at 4 (citing *United States v. Lacey*, 699 F.3d 710, 717-18 (2d Cir. 2012) and *United States v. Powell*, 831 Fed. App'x. 24, 25 (2d Cir. Dec. 15, 2020)). The Court agrees with the Government and applies the intended loss of more than $1,500,000.00 in accordance with Application Note 3(A) to U.S.S.G. §2B1.1, which provides "loss is the greater of actual loss or intended loss."

Defense counsel also argues Defendant qualifies for the two-level Zero-Point Offender reduction pursuant to U.S.S.G. §4C1.1 because, *inter alia*, Defendant's offense did "not involve any substantial financial hardship to anyone" as "[t]here was no actual loss to any consumers or individuals" and "every penny of [the loss to insurance carriers] will be paid back in restitution." *Id.* at 3-4, 7. Altogether, defense counsel calculates Defendant's total adjusted offense level is 16. *Id.* at 7-8.

8

Defendant has no prior criminal convictions, meaning he has a criminal history score of zero. PSR ¶¶ 27-32; *see also* U.S.S.G. §4A1.1. This results in a criminal history category of I. U.S.S.G. §5A. All parties agree with this criminal history category. PSR ¶ 29; Gov't Mem. at 2; Def. Mem. at 2.

A criminal history category of I and a total offense level of 20, as advanced by Probation, result in a Guidelines sentencing range of between 33 and 41 months. U.S.S.G. §5A; PSR ¶ 60; *see also* Plea Agreement ¶ 2. Relying on a total offense level of 18 and a criminal history category of I, the Government calculates a Guidelines sentencing range of between 27 and 33 months of imprisonment. Gov't Mem. at 2. According to defense counsel's calculation, a total offense level of 16 and a criminal history category of I result in a Guidelines range of 21 to 27 months of imprisonment. U.S.S.G. §5A. The Court agrees with the Guidelines calculations of the Government.

The parties' recommendations vary as to an appropriate sentence.

Probation recommends a sentence of 12 months and one day of imprisonment; an Order of Restitution in the amount of $738,724.30 joint and several, due immediately and payable at a rate of $25 per quarter while in custody and 10% of monthly gross income while on supervised release; and two years of supervised release with special conditions. Probation Recommendation at 1. Probation does not recommend the Court impose a fine, given the priority of restitution. *Id.* at 2. Probation recommends Defendant be excused from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d). *Id.* at 1. Probation bases its sentence on the potential financial hardship on Defendant's family that a lengthy term of imprisonment would cause; Defendant's lack of criminal history; the non-violent nature of the instant offense; Defendant's rehabilitation and volunteer efforts; and the fact that Probation's Guidelines calculations are

9

premised largely on the intended loss rather than the actual harm caused. *Id.* at 2. Probation notes the Court may consider the latter two factors—Defendant's rehabilitation and volunteer efforts and the reliance on the intended loss amount in its Guidelines calculations—as mitigating factors for a potential departure or variance. PSR ¶¶ 73-74.

Defense counsel recommends a sentence of probation with home detention. Def. Mem. at 2, 8, 19. Defense counsel explains Defendant initially viewed his fraud scheme "as a win/win: he sells the lactose free formula the parents give him for his own profit, and the families receive free regular formula from Vlad. He clearly fooled himself into thinking that his fraudulent, criminal choices weren't hurting anyone because he was helping families, many of whom were single mothers or fathers in need, while he was also seeing a profit. He fooled himself into overlooking that the insurance companies were being duped. Admittedly, his mindset at the time was distorted and wrong." *Id.* at 13. Since then Defendant "has fully accepted responsibility for his conduct and has done everything possible to make amends," according to defense counsel, who notes Defendant has fully paid the agreed upon restitution of $738,724.30 and has also agreed to the forfeiture of $932,789.00. Def. Mem. at 1, 19. Defense counsel emphasizes Defendant's efforts to rehabilitate himself, including his volunteering and involvement with the Aleph Institute, which was created by the Honorable late Jack Weinstein to provide "alternatives to incarceration for those deemed eligible." *Id.* at 2; *see also* Letter from the Aleph Institute, Exhibit B to Def. Mem. at 1, ECF No. 28-2 (recommending Defendant receive a sentence of "home detention, together with a program of continued employment and community service, spiritual counseling, and therapy, in lieu of incarceration"). Defense counsel argues Defendant's first-time offender status means his "chance of recidivism is remote at best" and he has already felt the consequences of his choices, including the "loss of a career he once loved, the loss of

10

employment opportunities since this arrest, the loss of respect from his family and friends, and perhaps most importantly, the loss of his own integrity for engaging in such poor decision making." Def. Mem. at 16.

This Court has read and considered the letters written by Defendant's family members, friends and supporters, and Defendant himself, along with the letter from the Aleph Institute. *See* Exs. to Def. Mem., ECF Nos. 28-2, 28-5, 28-6; PSR ¶ 15. These materials describe Defendant as a loving father and dedicated husband; a hard worker; and a caring member of his community. *Id.* The Court appreciates Defendant's words and those his advocates have said on his behalf.

The Government recommends a Guidelines sentence of between 27 and 33 months' imprisonment and forfeiture in the amount of $932,789.00. Gov't Mem. at 1. The Government also recommends the Court adopt its proposed Order of Restitution, requiring restitution in the amount of $738,724.30, which it attached to its sentencing submission. ECF No. 31-1. In making its recommendation, the Government notes Defendant's remorse and "several commendable steps towards rehabilitation, including donating over $300,000 in baby formula that he illegally obtained and which law enforcement declined to seize lest it go to waste as seized evidence." Gov't Mem. at 6. Nonetheless, the Government argues Defendant's "multi-year pattern of pretending to be dozens of parents to extract money from insurance companies" and "general deterrence [as] a paramount consideration in white collar cases such as this" warrant a term of incarceration within the recommended Guidelines range. Gov't Mem. at 6.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

    **E.**    **Pertinent Policy Statement(s) of the Sentencing Commission**

11

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not expressly drawn the Court's attention to applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. Restitution in the amount of $738,724.30 is owed to Defendant's victims. PSR ¶¶ 12, 69; *see* Proposed Order of Restitution, ECF No. 31-1.

## IV. CONCLUSION

And finally, the Court has this to say. A brilliant actor named Nick Wyman portrayed the corrupt French innkeeper in the Broadway production of the musical Les Misérables. But even his character never stooped so low as to steal baby formula from infants in the midst of a pandemic.

For the reasons set forth above, the Court imposes a sentence of 33 months of incarceration; two years of supervised release with both the standard and special conditions of

supervised release; and the mandatory $100.00 special assessment. Forfeiture in the amount of $932,789.00 is ordered in accordance with the Order of Forfeiture at ECF No. 14. Restitution in the amount of $738,724.30 is also ordered in accordance with the Order of Restitution at ECF No. 32, which the Court is granting as of this sentencing. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given the priority of restitution and forfeiture. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum thereto, ECF Nos. 15, 18, 25, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 17, 2024
Brooklyn, New York